# STATE OF MICHIGAN

# COURT OF APPEALS

SHEFA, LLC,

        Plaintiff/Counterdefendant-
Appellant,

v

XIAO HUA GONG,

        Defendant/Counterplaintiff-
Appellee,

and

EDWARD HOTEL DETROIT, LLC,

        Defendant.

UNPUBLISHED
October 4, 2018

No. 337629
Oakland Circuit Court
LC No. 16-154641-CK

Before: TUKEL, P.J., and BECKERING and SHAPIRO, JJ.

PER CURIAM.

In this dispute related to the attempted purchase of commercial real property, plaintiff, Shefa, LLC, appeals as of right the trial court's order granting summary disposition in favor of defendant Xiao Hua Gong. For the reasons provided below, we affirm.

## I. BASIC FACTS

In this case, plaintiff claims that defendant[1] wrongfully terminated their Purchase Agreement ("the Agreement") to purchase real property. Plaintiff also claims that defendant

---

[1] We will refer to "defendant" as defendant Xiao Hua Gong. Defendant Edward Hotel Detroit, LLC was dismissed as a party and is not part of this appeal.

-1-

failed to fulfill his obligations under the aforementioned agreement. Accordingly, plaintiff believes that it should retain the $500,000[2] earnest money deposit made by defendant.

Of note, in February 2014, before the parties entered into the Agreement at issue, plaintiff filed for relief under Chapter 11 of the Bankruptcy Code. In its petition for bankruptcy, plaintiff asserted that it was a "single asset real estate case," where the single asset was real property ("the property") located at 16400 J.L. Hudson Drive, Southfield, Michigan, which contained a vacant hotel, known as the Plaza Hotel. The largest creditor was Oakland County, which claimed it was owed almost $3.7 million for past due property taxes and water/sewerage charges

On December 15, 2015, plaintiff and defendant entered into the Agreement for the property, where plaintiff agreed to sell the property to defendant. The Agreement required defendant to pay $5,500,000 total. Defendant then made the $500,000 earnest money deposit in accordance with the Agreement.

On April 10, 2016, at 5:01 p.m., when closing had yet to occur as contemplated, defendant terminated the Agreement and consequently requested that the earnest money deposit be refunded the next day. Defendant sent a letter, listing the following reasons for terminating the Agreement:

1. The Purchaser has determined that satisfactory title insurance cannot be obtained;

2. The Seller failed to remedy the title defects described in the Purchaser's Title Objection Letter dated March 16, 2016 and [failed to] obtain and deliver to the Purchaser, a revised commitment for title insurance and/or survey, which reflects that all such defects have been remedied, in the time and manner required by the Purchase Agreement, and moreover, that the Seller failed to notify the Escrow Agent to promptly refund the Purchaser's Deposit in full termination of the Purchase Agreement.

3. The Seller failed to close on April 1, 2016 and then again on April 10, 2016 as required; and

4. The Seller failed to perform and is unable to perform its duties and obligations under the Purchase Agreement, to provide both possession and marketable and clear title by Warranty Deed to the Purchaser at closing. Moreover, in the Purchase Agreement, the Seller made certain representations and warranties to the Purchaser, including the representation and warranty that Seller was the owner of the Property in fee simply and that Seller had the full power and authority to convey the Property to the Purchaser in the condition required by the Purchase Agreement. Seller breached this representation and warranty. The

---

[2] The $500,000 earnest money deposit was in Canadian currency. The other dollar amounts referenced in the Purchase Agreement and this opinion are in United States currency.

Seller also represented and warrantied to the Purchaser that the Seller had the power and authority to enter into the Purchase Agreement and that the Purchase Agreement constituted the legal, valid and binding agreement of the Seller, enforceable against the Seller in accordance with its terms. The Seller breached this representation and warranty as well. Furthermore, the Seller agreed that at Closing, all necessary and appropriate action will have been taken by the Seller, including (i) the authorization and approval of the execution of and entry into the Purchase Agreement; (ii) the execution and delivery by the Seller of the documents and instruments to be executed by the Seller at Closing; (iii) the performance by the Seller of the Seller's duties and obligations under the Purchase Agreement; and (iv) the taking of all other acts that are necessary and appropriate for the consummation of the sale and purchase of the Property as contemplated by the Purchase Agreement. The Seller breached these covenants. The Bankruptcy Court did not approve the sale of the Property and Purchase Agreement as we believe the Court should have upon the motion of the Seller.

On August 19, 2016, plaintiff filed a complaint, in which two counts were alleged: breach of contract and declaratory relief. On September 21, 2016, defendant filed a counterclaim, alleging that plaintiff breached the contract such that defendant was entitled to retain the earnest money deposit.

On January 18, 2017, defendant filed a motion for summary disposition under MCR 2.116(C)(10), arguing that he was entitled to the $500,000 earnest money deposit under the terms of the Agreement. Defendant alleged that he was entitled to retain the earnest money deposit under various theories: (1) plaintiff breached "representations" in the Agreement pertaining to plaintiff's authority to convey title in light of the pending bankruptcy proceeding, (2) plaintiff breached the Agreement when plaintiff sought to impose additional conditions on defendant, including requiring defendant to execute an amended purchase agreement, (3) the title insurance was not satisfactory to defendant, and under the terms of the Agreement, defendant was entitled to retain the earnest money deposit in that instance, and (4) because of plaintiff's bankruptcy status and the circumstances surrounding the money owed to the government due to property taxes and fees, plaintiff could not convey title to the property clear of all liens and mortgages.

The trial court rejected defendant's argument that plaintiff breached the Agreement by making misrepresentations in the Agreement. The court ruled that a letter regarding bankruptcy, which was attached to the Agreement, fulfilled its purpose of putting defendant on notice of the pending bankruptcy proceedings. Moving onto the various claims of contractual breaches, the trial court ultimately ruled that defendant did not substantially breach when he did not request title insurance within 10 days of the effective date of the Agreement. But plaintiff, on the other hand, had breached the Agreement when it required defendant to "sign mortgages, sign warranty deeds, and everything that was later included in the bankruptcy plan." The trial court therefore granted defendant's motion because it determined that plaintiff breached the Agreement instead of defendant. Aside from any breach, the court also ruled that defendant was entitled to a return of the $500,000 because he was within his contractual right to cancel the Agreement due to not being satisfied with the title commitment.

II. ANALYSIS

On appeal, plaintiff argues that the trial court erred when it granted defendant's motion for summary disposition. We disagree.

A trial court's decision on a motion for summary disposition is reviewed de novo. *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 62; 642 NW2d 663 (2002). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999) (citation omitted). The motion is properly granted when there are no genuine issues regarding any material fact and the moving party is entitled to judgment as a matter of law. *Hazle v Ford Motor Co*, 464 Mich 456, 461; 628 NW2d 515 (2001). Further, the "[c]onstruction and interpretation of a contract are questions of law that we review de novo." *Calhoun Co v Blue Cross Blue Shield of Mich*, 297 Mich App 1, 12; 824 NW2d 202 (2012).

At the outset, we agree with defendant that regardless of plaintiff's raised issues, plaintiff is barred from appellate relief because it failed to challenge all the reasons for the trial court's grant of summary disposition. "[A] party's failure to brief an issue that necessarily must be reached precludes appellate relief." *City of Riverview v Sibley Limestone*, 270 Mich App 627, 638; 716 NW2d 615 (2006); see also *Roberts & Son Contracting, Inc v N Oakland Dev Corp*, 163 Mich App 109, 113; 413 NW2d 744 (1987). Here, defendant moved for summary disposition and argued that he should be able to recoup his $500,000 earnest money deposit on four grounds: (1) plaintiff breached representations in the Agreement, (2) plaintiff impermissibly sought to impose additional conditions on defendant, (3) the title insurance was not satisfactory to defendant, and (4) plaintiff could not convey title to property free and clear of all liens and mortgages. The trial court expressly rejected defendant's view that plaintiff breached any representations in the Agreement, but the court ruled that defendant was entitled to summary disposition on the second and third grounds.[3] As a result, the trial court granted defendant's motion for summary disposition on the basis that defendant could cancel the agreement due to not being satisfied with the title commitment *and* on the independent basis that plaintiff was imposing other conditions that were not present in the Agreement by requiring defendant "to sign mortgages, sign warranty deeds, and everything that was later included in the bankruptcy plan." While plaintiff addresses the first basis of the court's decision, plaintiff does not address the second basis. Therefore, because that was an essential part of the trial court's judgment, plaintiff is precluded from appellate relief. See *Sibley Limestone*, 270 Mich App at 638; *Roberts & Son Contracting*, 163 Mich App at 113.

---

[3] The trial court did not address defendant's fourth argument that plaintiff could not convey title to the property free and clear of all liens and mortgages.

Although we have ruled that plaintiff has waived appellate review by failing to address all of the independent reasons for the trial court's grant of summary disposition, we nonetheless will address plaintiff's remaining arguments, which we have determined not to be meritorious.

## A. DEFENDANT'S FAILURE TO TIMELY ORDER TITLE COMMITMENT

Plaintiff first contends that the trial court erred because defendant was the first to breach the contract, thereby rendering him unable to sustain any claim of his own for breach of contract. But, while defendant technically breached the Agreement first, it was not a material breach; therefore, the trial court correctly determined that defendant was not barred from pursuing his claim.

At issue is defendant's failure to order a title commitment within the time prescribed by the Agreement. Paragraph 6(b) of the Agreement provides, in pertinent part:

> **Title Insurance:** Within ten (10) days of the Effective Date of this Agreement, Purchaser shall order a commitment for an Owner's ALTA Title Policy . . . from <u>Title express</u> (the "Title Company"), and shall provide a copy of the same to Seller upon receipt. Purchaser shall notify Seller in writing within thirty (30) days of receipt of any concerns that Purchaser may have with such Commitment.

Here, there is no question that defendant did not fulfill his obligation to order the title commitment with 10 days of the Agreement's effective date. Defendant freely concedes that he did not order any title commitment during this time frame. Therefore, defendant did breach the contract by failing to perform his obligation to order a title commitment within the required time frame.

Plaintiff asserts that because defendant was the first to breach, defendant cannot then pursue a breach of contract claim against plaintiff. Plaintiff relies on the rule in Michigan that "one who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform." *Michaels v Amway Corp*, 206 Mich App 644, 650; 522 NW2d 703 (1994) (quotation marks and citation omitted). "However, the rule only applies if the initial breach was *substantial*." *Able Demolition v Pontiac*, 275 Mich App 577, 585; 739 NW2d 696 (2007) (emphasis added). A "substantial breach" is one that "effect[s] such a change in essential operative elements of the contract that further performance by the other party is thereby ineffective or impossible, such as the causing of a complete failure of consideration or the prevention of further performance by the other party." *McCarty v Mercury Metalcraft Co*, 372 Mich 567, 574; 127 NW2d 340 (1964) (citations omitted). Notably, in its brief on appeal, plaintiff ignores caselaw that requires the initial breach to be "material" and consequently does not address *why* defendant's breach should be considered a material breach. Regardless, it is clear from the record that defendant's failure to order the title commitment within 10 days of executing the Agreement did not cause a complete failure of consideration or the prevention of further performance by plaintiff. Indeed, the record shows that despite defendant not ordering the title commitment within 10 days after the Agreement's execution, the parties continued to work toward closing on the sale of the property and that the failure to order the commitment by December 25 did not have any tangible effect. Indeed, plaintiff admitted in its response to defendant's motion for summary disposition that, even after the title commitment

was not timely ordered, "[t]he parties could have and should have proceeded to closing." Therefore, the trial court did not err when it ruled that defendant's failure to order the title commitment within 10 days of the Agreement's execution was not a substantial breach.

## B. PLAINTIFF'S WAIVER DEFENSE

Plaintiff next asserts that the trial court erred when it granted defendant's motion for summary disposition because defendant waived his right to claim any dissatisfaction with the title commitment and further erred when it granted the motion before the close of discovery.

Plaintiff has not shown how the trial court erred when it failed to sua sponte rule that defendant waived his right to claim any dissatisfaction with the title commitment. At the trial court, plaintiff responded to defendant's motion for summary disposition and argued that (1) defendant could not succeed in any breach of contract claim because he was first to breach the Agreement by failing to timely order the title commitment, (2) there were no misrepresentations because the Agreement fully disclosed the bankruptcy proceedings, and (3) the bankruptcy proceedings did not prevent the sale of the property or the issuance of title insurance. Notably, with respect to defendant's view that he was free to terminate the agreement on the basis of being dissatisfied with the title commitment, plaintiff never argued that defendant waived his right to lodge any such objections, and the trial court did not make any express rulings related to waiver.

With plaintiff not asserting this position at the trial court, the trial court was not obligated to search for, assert, and apply this legal argument on plaintiff's behalf. Indeed, plaintiff does not identify any caselaw that would support such a position. On the contrary, when responding to a motion for summary disposition brought under MCR 2.116(C)(10), as plaintiff was, it was its responsibility as the non-movant to show that the motion should not be granted. See *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996); see also MCR 2.116(G)(4) ("[A non-movant] may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial. *If the adverse party does not so respond, judgment, if appropriate, shall be entered against him or her*.") (Emphasis added.) Thus, because plaintiff did not respond to defendant's motion with this waiver argument, plaintiff cannot show that the trial court erred when it failed to deny defendant's motion based on this never-asserted argument.

Moreover, examining the merits of such a positon does not assist plaintiff. Plaintiff contends that defendant waived the condition of a satisfactory title commitment by failing to timely order the title commitment and by subsequent e-mails between defendant's attorney and plaintiff. "[A] waiver is a voluntary and intentional abandonment of a known right." *Quality Prods & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 374; 666 NW2d 251 (2003).

First, the mere fact that defendant did not timely order the title commitment does not equate to an intent to relinquish his right to receive a satisfactory commitment. Notably, plaintiff in its brief on appeal offers nothing other than the conclusory statement that the failure to timely order the title commitment constituted a waiver of the requirement that defendant timely provide a title commitment. An appellant's failure to adequately brief an issue constitutes an abandonment of that issue. *Woods v SLB Prop Mgmt, LLC*, 277 Mich App 622, 627; 750 NW2d

228 (2008). Regardless, at best, the failure to timely order the title commitment would demonstrate an intent to not obtain the commitment in a timely manner, not an intent to waive a satisfactory title commitment completely. Second, plaintiff's reliance on e-mails sent by defense counsel is misplaced. As plaintiff admits, the e-mails at issue were never part of the lower court record. Accordingly, this Court is not to consider them. See *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002) ("This Court's review is limited to the record established by the trial court, and a party may not expand the record on appeal."). Accordingly, plaintiff has failed to demonstrate any error requiring reversal.[4]

## C. GRANT OF SUMMARY DISPOSITION BEFORE THE CLOSE OF DISCOVERY

Plaintiff also argues that the trial court erred when it granted defendant's motion for summary disposition before the close of discovery. The substance of plaintiff's argument is set forth here:

> In addition to the deposition of [defendant], additional depositions were necessary for [defendant's] former attorney, Scott Au, as well as representatives from the title company, real estate agents and others. It is highly likely that had these depositions been permitted to occur, the trial court would have determined that a genuine issue of material fact existed and it would have denied [defendant's] motion for summary disposition.

"Generally, a motion for summary disposition is premature if granted before discovery on a disputed issue is complete." *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 24-25; 672 NW2d 351 (2003). "However, summary disposition may nevertheless be appropriate if further discovery does not stand a reasonable chance of uncovering factual support *for the opposing party's position*." *Id.* at 25 (emphasis added). Here, when opposing defendant's motion for summary disposition at the trial court, plaintiff in its filings at the trial court never asserted that it required more discovery to help support its arguments. But at the motion hearing, plaintiff asserted:

> I would also put that discovery is still open in this matter. . . . [W]e had [defendant's] deposition scheduled, but then travel plans, you know, dictated, but we still had time to take that deposition. So, I -- I think if it were taken, there could be some definitely questions of fact as to wh -- [defendant] was definitely aware of what the procedure was and that he would be buying -- this was not a normal -- this was not a normal closing. There's no doubt about that, um, but he agreed up front to this new -- to this structure, and it was contemplated by parties

---

[4] To the extent plaintiff suggests that this is another reason why the trial court should not have granted summary disposition before the close of discovery, the position is without merit. As plaintiff states in its brief on appeal, the e-mails were sent to *plaintiff* from defendant's counsel. Because these e-mails already were in the possession of plaintiff, it is absurd to think that the lack of discovery somehow contributed to them not being identified earlier.

that, yes, they would close, and then that he would continue on with the burdens of -- of the bankruptcy.

Thus, while plaintiff never asserted in its brief with the trial court that further discovery would be necessary, counsel did mention the issue during the motion hearing. But importantly, plaintiff's counsel only suggested that further discovery would assist in creating a genuine issue of fact with respect defendant's knowledge. And more specifically, plaintiff only argued that discovery would aid in showing that defendant was fully aware that there was an on-going bankruptcy proceeding that was contemplated by all the parties. This argument directly addressed defendant's position that plaintiff "breached representations" in the Agreement related to the existence of plaintiff's bankruptcy. However, the trial court agreed with plaintiff that the attached letter to the Agreement adequately put defendant "on notice of the bankruptcy." Therefore, because plaintiff prevailed on the issue that it claimed would benefit from further discovery, plaintiff cannot show how allowing more discovery would have made any difference. In essence, plaintiff's request for further discovery is moot because the ultimate relief sought— defeating defendant's claim that plaintiff somehow mispresented its bankruptcy status to defendant—has already been granted. See *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998).

Affirmed. Defendant, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Jonathan Tukel
/s/ Jane M. Beckering
/s/ Douglas B. Shapiro